Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

DEC 16 2020

DOUGLAS F. YOUNG, Clerk
By

Deputy Clerk

## UNITED STATES DISTRICT COURT

for the

District of Western

Division

Houston Harland Ker
*Plaintiff(s)*

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Tyson Chick-n-Quick
*Defendant(s)*

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 20-5218 TLB

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☐ Yes ☒ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Houston Harland Ker |
| Street Address | 14854 Dutchmens dr |
| City and County | Rogers, Benton |
| State and Zip Code | Ar. 72756 |
| Telephone Number | 479-644-1285 |
| E-mail Address | Cupofttlc @gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1
Name
Job or Title *(if known)*

Tyson Chick-n-Quick

Street Address    400 W. Olrich

City and County    Rogers   Benton

State and Zip Code    Ar, 72756

Telephone Number    479 - 636 - 7251

E-mail Address *(if known)*

Defendant No. 2

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

## C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

Name    Tyson Chick-n-Quick

Street Address    400 W. Olrich

City and County    Rogers, Beton

State and Zip Code    Ar, 72756

Telephone Number    479 - 636 - 7251

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

## III.     Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.     The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me.

☐ Termination of my employment.

☑ Failure to promote me.

☑ Failure to accommodate my disability.

☑ Unequal terms and conditions of my employment.

☑ Retaliation.

☐ Other acts *(specify)*:

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.     It is my best recollection that the alleged discriminatory acts occurred on date(s)

_____

C.     I believe that defendant(s) *(check one)*:

☐     is/are still committing these acts against me.

☒     is/are not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒     race                Spanish recieve special treatment

☐     color               _____

☐     gender/sex          _____

☐     religion            _____

☐     national origin     _____

☒     age *(year of birth)*     1963     *(only when asserting a claim of age discrimination.)*   40's + younger   recieve promotions

☒     disability or perceived disability *(specify disability)*

Diabetics are not allowed to check blood Sugar

E.     The facts of my case are as follows. Attach additional pages if needed.

Befor I accepted my maint. position I was told that
I would be trained 3 hours a week + given tests to level
up. I looked forward to starting a new career confident
that Tyson would do what it said since Honor, Int-
egrity, Safety & family was prominatly Posted on walls,
Flags, and handbooks. The opposit has proven true.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.     Exhaustion of Federal Administrative Remedies

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

EEOC filed about 3/23/20

B.     The Equal Employment Opportunity Commission *(check one)*:

☐     has not issued a Notice of Right to Sue letter.

☒     issued a Notice of Right to Sue letter, which I received on *(date)*     _____.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.     Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒     60 days or more have elapsed.
☐     less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. Forgiveness of loan against my 401K Lost Wages 51,156. Medical Bills 4,712. Knowledge not recieved 70K Long term physical Damages 80K, Lawyer fees 60K 13K Cross Church & 13K CBN for tithe = 288,868.00 A 8 hour Daytime job paying 1950.00 a week All my Unemployment due

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   12-15-2020

Signature of Plaintiff     N. N. Ker

Printed Name of Plaintiff     Houston Harland Ker

### B.   For Attorneys

Date of signing:

Signature of Attorney _____

Printed Name of Attorney _____

Bar Number _____

Name of Law Firm _____

Street Address _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Little Rock Area Office

820 Louisiana St., Suite 200
Little Rock, AR 72201
Little Rock Direct Dial: (501) 324-5060
Writer's Email chris.stafford@eeoc.gov
FAX (501) 324-5991

Houston H. Ker
14854 Dutchmans Dr
Rogers, AR 72756

Date:09/17/2020

## Re: Charge #493-2020-01252; KER v TYSON FOODS

Dear Mr. Ker:

The enclosed Notice terminates the processing of your charge and gives notice of your right to sue within 90 days. On or about 8/20/2020, a copy of the Respondent's position statement was sent to you electronically. After receiving your response, all evidence collected during the investigation was thoroughly reviewed. The investigation revealed the following facts:

You alleged you were treated differently in the terms and conditions of employment, denied training, wage increases, and promotions because of your age (56) in violation of the Age Discrimination in Employment Act (ADEA).

Investigation revealed that you did not complete the training modules for level 3, thus were not qualified to test to a level 4 position. All maintenance generalists are held to these same training/testing requirements, regardless of age. In order to establish a prima-facia violation of the ADEA, a complainant must show that their age is the "but for" reason for a challenged adverse employment action. In other words, they must show that except for their age, the challenged adverse action would not have occurred. There is insufficient evidence showing a causal nexus between your age and any adverse employment action. Based on its investigation, the Commission was unable to conclude a there was a violation of EEOC enforced statutes.

No further action will be taken by this office regarding your charge of discrimination. The Director's determination in this matter is enclosed. This determination concludes the processing of the charge by the EEOC, but does not affect your right to sue on your own behalf. You may pursue the matter by filing in Federal District Court as explained in the Dismissal and Notice of Rights.

Sincerely,

*Chris Stafford*
Chris Stafford
Federal Investigator

Enclosure: Dismissal and Notice of Rights

III B

On 8/7/2015 Israel Riese and I were given 18 months to receive training and test out of level 4. He received the training and tests to reach level 6 and this year he was promoted to Refrigeration. He is Spanish and is about 30 years old.

I was not allowed to treat my blood sugar as needed. Most recently I have an exact date of Monday, 3/23/2020 when I told Jose Guzman (my 32 year old Spanish lead) that my blood sugar was low at 16:30 hours after the rest of my crew had been on their 30 minute lunch for about an hour. He said David Hernandez or Martine Sabritino, both younger Spanish team members would be back from lunch and then I could go to lunch. Both of them and Udah Gonzoles came back at 17:30 hours after taking two hour lunches. I worked dizzy until then and then was relieved to take my 30 minute lunch.

All other team members on Jose Guzman's crew received extra and longer breaks every day like mentioned above. January 1, 2020 all maintenance left at 02:00 hours and I stayed to 03:00 hours saving the plant from flooding.

May 31, 2020 to June 1, 2020 I was the only one on my crew to show up for work and completed five men's work with no break downs on any of the equipment that I had completed the preventative maintenance on. This was all documented in the Saps system. June 1st was my birthday and I was told that I couldn't take my birthday off as planned on Father's Day or any weekend. Two weeks later Jose Guzman was allowed to take off for his birthday even though I was still eligible, but I was still not allowed.

After Scott Valentic was falling behind on my training he quit training me. The last time he outright refused my training was Wednesday, 3/11/2020 when he said, "No safety training" even though I was responsible for completing Safety Walks which weren't done if I didn't do them. If I reported any safety concerns then I was normally required to fix them even if I had not received the proper training and the correction was above my pay grade. I had a training work order, #1000798268 that Scott did not let me complete.

All other Maintenance personnel that did Safety Walks were Level 5 or higher and were younger than me. As retaliation, not only did Scott quit training me, he put me in dangerous situations and then reprimanded me for them.


**Endocrinology**
**Washington Regional**

September 15, 2020

To Whom It May Concern,

The patient Houston Ker (DOB: 6/1/1963) is currently under my care for the treatment of type 1 diabetes. Mr. Ker's diabetes has been difficult to control and he does require the ability to do frequent blood glucose checks for glycemic monitoring. It was unfortunate to learn over this past summer, that his glycemic control had deteriorated due to the fact that he related he was not being allowed to check his blood sugar while at work. Taking insulin without being able to check one's blood sugar is dangerous and carries with it the very real risk of severe hypoglycemia which could lead to death. As such, his inability to check his sugars resulted in worsening glycemic control out of the the need avoid hypoglycemia while working. Because of his problems with checking his sugars at work, I went so far as to try and obtain a Dexcom continuous glucose monitoring device for him which would provide real time alerts regarding high and low sugars for him. However, due to insurance, he was unfortuantely not able to obtain this.

He has since taken a job that has been more accomodating with regard to blood sugar checking and as a result, I have seen an increase in his frequency of glucose checks and therefore an improvement in his blood sugars. His quality of life has therefore improved given the imrprovement in his blood sugar variability.

Please do not hesitate to call with any questions that you have about this. I appreciate your understanding in this matter.

Sincerely,

C. Rachel Kilpatrick, MD

*Here for you*

Name: Daniel Wilson

Phone Number: (479)644-6788

Age: 60+

Note: Daniel had passed highest paid levels of maintenance tests with 40 years of experience. Receives Level 5 pay, but also does Automated Tech. and Electrician work. He said that he was going to contact EEOC.


Name: Gary Johnson

Phone Number: (479)381-6436

Position: Maintenance Lead

Note: Gary is a Maintenance Lead and receives Level 6 pay. He identified the only difficulty I have ever had with hands on training. I was given parts from two different CIP pumps and told that they would fit together and would work. They didn't fit together and I struggled for a month while being ridiculed. Justin Rocher, my supervisor couldn't figure it out either. One Saturday instead of taking a break, Gary saw me working still on the pump and came over to put it together but he couldn't. That is when he realized that the parts fit, but were from two different pumps. Gary has been discriminated against, but doesn't want me to go into detail because he retires after December of 2020.


Name: Jaccob Coffit

Phone Number: (479)721-7800

Age: 40's

Position: Maintenance Supervisor

Note: Jaccob is a Maintenance Supervisor and is honest. He read the study material for the one test I had failed the first time around on a subject he is an expert in, welding. He saw how ambiguous some of the questions were and how one question that I had missed was not in the study material. The question was, "What colors are oxygen, argon and propane tanks?" I had answered that they can be any color, so we read the label. The answer they were looking for

were specific colors such as green for oxygen. The question that was not in the study material was, "What do you do if you cannot see the two edges you are welding together?" Jaccob told me afterwards, "Mark them with soap to see them better". (P.S. I received a test score of 80%, but received a failing score by missing by one answer.) Jaccob can attest that I had been passed up on classes that I had signed up for and told that they were full, such as the 3 phase motor class when newer maintenance workers got into the classes without signing up ahead of time. This class has been presented only three times in the past three years. Scott Valentic, the training supervisor was aware each time that I needed this class and was passed up, therefore I missed being able to take this class when newer and younger employees were all allowed to take the class. This was one of Scott Valentic's requirements in order to move up a level.

Name: Adam Wellner

Phone Number: (479)899-8960

Age: 50+

Position: Previous Maintenance Supervisor

Note: Adam witnessed and came to my defense from Scott Valentin the Training Supervisor for not getting my safety work done when I was on vacation and the computers were down when I was at work.

Name: Ahn Murry (Vietnamese)

Phone Number: (479)320-1218

Age: 55

Position: Maintenance Lead

Note: Ahn is a Maintenance Lead receiving Level m5 pay. He trained my 32 year old lead who receives Level M6 pay. Ahn has witnessed me train and do the Stack Off M7 & M8 work buckets proving that I could and did two or more people's work in Stack Off area and RTE area for more than a year. Ahn does not want to make trouble because of his age and language barrier. He has witnessed me train many younger men that receive more pay than I do.

Name: Alicia

Phone Number: (479)755-5099

Position: Nurse Manager

Note: I told Alicia about my neck hurting from having to wear the hard hat and face shield for so many hours. She was only concerned with COVID-19 cases.

Name: Barbara & Laurence

Phone Number: (479)366-2171

Note: Barbara and Laurence have been and have witnessed many discriminations.

Name: Bill Wheeler

Phone Number: (479)531-4123

Position: Counselor/Minister

Note: Bill is the Counselor (Minister) and is very honest. He knows about many of the discriminations I have faced and my pay and health issues.

Name: Chris Morrow

Phone Number: (870)200-0792

Note: Chris is an X-production Supervisor. He has witnessed me doing more than one person's job and training people younger with less experience than me that were getting paid more than me.

Name: Hendix Chavez

Phone Number: (479)616-3535

Note: I helped Hendix so that he could pass many of the computer tests. He also saw me train and help many others. Hendix knows that he has little chance of advancement unless I can help make Tyson keep its word.


Name: Isreal Riez

Age: 30+

Note: Isreal is honest. He was hired exactly at the same moment in Jeremy Stacey's office and started at Level M4 then given 18 months to pass level on test. He is the only one I know to work on Level M4 hands on. NONE OF THE OTHERS HAVE! Isreal has had three raises, but has only worked up to level 4 training.


Name: Jeremy Stacey

Work Phone Number: (479)878-2199

Note: Jeremy is the Maintenance Director. He hired me on September 8, 2015 and gave me one year to test to level. Jeremy told me Friday, January 12, 2018 when I came in on my day off to get an explanation for my treatment as an employee. I was always doing other people's jobs, that I would not get a raise until I passed the tests with no explanation on when that could happen and that I didn't have to train people making more money than me anymore. The next day, Saturday, January 13, 2018 I was training level 4 people and continued to do so until my resignation. He knows this from reading my computer entries and paperwork. He also knows Scott Valentic, the Training Supervisor was not training people very often, but created a NEW better paying position above Supervisors and below himself. Jeremy also knows that I kept a professional attitude in public and tried to keep my concerns to office visits.

Name: Jose Oriona

Phone Number: (479)381-5540

Position: Former Maintenance Lead

Note: Jose knows how I wasn't receiving training and was ostracized.


Name: Justin Roucher

Phone Number: (479)285-3730

Position: My Previous Supervisor

Age: 30+

Note: Justin knows most everything, but told me he had to play ball, meaning that he had to go along with the problems like they didn't exist and that was a condition of his being hired. I have caught him flat out lying to me and he has admitted it. Justin also knows that I have tried to get into the 3 faze motor class and had been denied all three times being told that the class was already full.


Name: Neftaly Rodreckez

Phone Number: (479)567-7049

Position: HR Manager

Note: I asked Neflaly to start watching the video cameras in October 2019. I followed up with him December 2019 if he had had a chance to view the videos. He had not had the time. Then on January 1, 2020 at 2:00 am I was left in charge of the whole plant. Sanitation was still cleaning and the plant would have flooded and came inches away from doing that before I found the water pumps and turned them on. I expected to hear from Mr. Rodreckez about doing more than my job, but didn't. Then beginning of February 2020 I asked again and Mr. Rodreckez wanted to know what shift and date. I told him 2nd shift New Year's night through to morning. At the beginning of March I still had not heard from Mr. Rodreckez, so I asked him in his office if he had looked. He said, "What was I supposed to see? Everything was fine." I said then you're not doing your job either and I'm tired of doing everyone's job with no

compensation. The whole parking lot emptied. All employees went home except for me, the lowest paid maintenance person and I saved the plant. This is management's job from Plant Manager down to my Supervisor. He asked if upper Maintenance Management knew and I said I don't know. It is not my job to inform them. Mr. Rodreckez said that they will know now. That is all I heard. I month later, Sanitation was sterilizing the break rooms with the new air filtration equipment running. I made them stop and turned off the air filtration equipment, saving the filters from being ruined and the employees from having to breathe the toxins, including viruses. I brought in a portable unit that we use at my house to the Plant Manager, Jeremy Hank to explain to him how they work and how they would have become contaminated. He thanked me for protecting the team members and saving the filters. Mr. Hank also asked if I could get him the information on the portable units for purchase. I had to drop this off on two separate days since people did not follow through and get the information that I had dropped off to him. Mr. Rodreckez has let my points build up to where I was about to lose my job because of 6 lifesaving surgeries and almost zero FMLA pay. Mr. Rodreckez has not gotten maintenance training going after more than a year of talking to him.

Name: Travis Fredrickson

Phone Number: (479)290-8766

Position: Director of HR Operations

Note: Mr. Fredrickson was able to get a maintenance trainer in Tuesday, October 15, 2019 and October 22, 2019 who he called Tex. Tex also said call him Tex and gave me 7 tests in those two days and I passed all seven tests. The average test takes an hour or more to take and we are only allotted one and a half hours for training time. These were the only tests that I was allowed to do for 2019 out of the 35+ hands on tests needed for level 3, despite all my efforts.

Name: Scott Valentic

Phone Number: (479)856-5054

Position: Ex-Training Supervisor, now Overall Maintenance Supervisor

Note: Mr. Valentic is very smart. Mr. Valentic never has time for training, but gets promoted anyway? He makes his own tests and study sheets, but not available to go over either one or to ask questions. Supervisors say you will have to ask Scott or Jeremy. Neither of them are available in their offices and when I see them they don't have time. That's better than being misinformed, disinformed or lied to.

Name: Evelyn Herman

Phone Number: (479)295-8817

Position: Safety Manager

Note: Asked if I would attend her safety and Ergonomics meetings even though it meant coming in on my days off. I happily said, "Yes" and arranged my schedule to meet the requirements. Evelyn trained me the Tyson way to do safety walks. I did these every production day I was at work. All the other maintenance personnel that had ever and currently doing these walks were younger and paid Level M5 pay or above, which I never received. On my days off and days I missed, no one did these walks. How does this demonstrate the importance of safety first? When I found an issue, I was assigned to fix it even if it was above my training and/or pay grade.

Evelyn never was given permission to give me a Tyson pallet jack and fork lift license even though I was assigned as the mechanic for that equipment. I was later written up by Scott Valentic for driving a pallet jack as part of working on the equipment.

September2019, Evelyn had posted a new position was being offered for a Safety Manager Assistant. The pay was $700.00 per week less than I was making at the time, but I applied anyway for the opportunity so that I could someday apply for the Safety Manager job when it became available.

October 2019, before my interview for the Safety Manager Assistant job, I learned through the grapevine that a 30 year old named, Roseland was being hired. Tyson required at least three people at a minimum be interviewed. Roseland was hired even though she didn't have my 20+ years of safety experience.

I believe that Mrs. Herman may be the most honest of anyone in management that I have a contact number for.

Others in management that I believe will be honest are John Ake, Mark Seacrest, Ron Shilley, Julio Addope, Troy Keech, Thor at Corporate (a Pak Mak and Ishida scale specialist). Others in maintenance that I believe will be honest are most of my whole crew in the RTE and Stackoff area except for my Lead, Jose Guzman. Kenney Rickson will be honest and as well as Shawn Gladden, Mike Mustane, Andy Nepochan, Bobby and Mike Skelton, Gary Cook, Georgia Justice, Tracey Morgan, Ron Landis, Zoeltan Paralli and Wyman (Tracey's partner in stack off on B shift).

EEOC Form 161 (11/16)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To:  Houston H. Ker<br>14854 Dutchmans Dr<br>Rogers, AR 72756 | From:  Little Rock Area Office<br>820 Louisiana<br>Suite 200<br>Little Rock, AR 72201 |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|
| **EEOC Charge No.** | **EEOC Representative** | **Telephone No.** |
| 493-2020-01252 | Chris E. Stafford,<br>Investigator | (501) 324-5812 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**William A. Cash, Jr.,**
**Area Office Director**

09/17/2020

*(Date Mailed)*

cc:  **Olivia McClellan**
**Sr. EEO Specialist**
**TYSON FOODS, INC.**
**220 Don Tyson Parkway Cp422**
**Springdale, AR 72762**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**     --     **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EOC,

Within the first few months of my employment at Tyson C-N-Q I could tell that the team member's health and safety was not a concern in the maintenance department. On Wednesday, January 6, 2016 I worked my whole shift even though I was hurting and my urine was a dark orange color. I didn't want to jeopardize my job and I knew that I had a doctor's appointment scheduled for the next morning. When the doctor saw me, he immediately had me call into work to tell them that he was admitting me into the hospital and I would be missing work. Within the next month after returning to work, my blood sugar would bottom out. I then went to the breakroom to eat and take care of it notifying John Aldridge and Brandon Grimmet of what I was doing. They told Dale Coffelt (my supervisor) who then came into the breakroom asking what is going on (referring to why I was not working)? I explained that I was raising my blood sugar and he said hurry up and when it's up to get back to work.

The horse play (as Dale Coffelt called it) became mean and break times were cut. I have never again taken a break for sugar since then, because of the ostracizing I received for the next couple of months until Brandon Grimmet in John Aldridge's presence asked if he could borrow my screwdriver. I said he could if he returns it, as many of my tools have disappeared. He asked, "What do you mean by that?". I then pulled my screwdriver out of his tool pouch and pointing it at him said, "You want to borrow this screwdriver, my screwdriver?". He and John Aldridge then left and I was called into HR for threatening Brandon Grimmet with a screwdriver in front of John Aldridge. Dale Coffelt was in there as the HR Supervisor went over these

accusations. I repeated this true story and listed incidents of abuse with witnesses and dates. Dale Coffelt became angered and said, "Listen Buster" to me, but caught himself as Manuel, the HR Supervisor, noticed his name calling of me and his anger.  Dale Coffelt then excused himself and I gave Manuel more incidents of hostility and my safety and examples of my health being put in jeopardy with dates and witnesses.  Manuel did an investigation (doing his job) and I didn't hear any more about threatening Brandon Grimmet.  That only meant that I would be abused by others in different ways which I have kept track of for the last 4 years as Tyson has taken my health and refused to pay me for the two or more men's jobs I have done during my shift. They have not trained me as they promised me and I have had to train other people that are getting paid more than me. My health has deteriorated because of my treatment at Tyson so much that I can no longer work 60+ hours like I did in 2018 to make a decent living.  If Tyson (C-N-Q) had followed its core values found on *page 1 of the On-The-Job Safety Manual, I would be making a decent living all along at 40 hours a week as I agreed to on September 7, 2015 (recorded September 8, 2015). I have come forward with all the information I had going up the chain of command at Tyson (C-N-Q) and then to corporate with no results and only abuse for years now.  I know you are my only hope.

God bless and thank you,

Houston H. Ker
March 22, 2020